IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WAJIH IREIFEJ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV739 |
| | ) | |
| TRAVELERS CASUALTY INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss by Travelers Casualty Insurance Company of America ("Travelers") [Doc. #9]. Travelers contends that the breach of contract and bad faith claims are barred by the statute of limitations and that the Complaint fails to state a claim for bad faith or unfair and deceptive trade practices for which relief can be granted. For the reasons explained below, the motion is granted.

I.

On April 28, 2015, Plaintiff Wajih Ireifej's property suffered direct physical loss and damage. (Compl. ¶ 5 [Doc. #5].) Notice of the loss was promptly given to Travelers, who had issued the replacement cost policy ("the Policy") covering the property. (Id. ¶¶ 4-6, 11.) The loss was deemed covered, and an adjustment of the loss commenced. (Id. ¶ 7.) However, after the adjustment, the parties disagreed on the amount of loss and the claim was sent to appraisal. (Id. ¶ 8.) On

September 25, 2019, an appraisal award was signed by the umpire, and Travelers issued a check for the appraisal award on October 10, 2019. (Id. ¶¶ 9-10.) Over the next few months, Ireifej attempted to locate a suitable replacement property because the appraisal funds were insufficient to repair the property. (Id. ¶ 13.) On March 27, 2020, Ireifej's representative notified Travelers that Ireifej intended to purchase a replacement property and, before he spent millions of dollars, he wanted to confirm that Travelers would comply with its obligations under the Policy. (Id. ¶ 14.) Travelers allegedly refused. (Id. ¶ 15.) Ireifej filed suit against Travelers on July 13, 2020 for breach of contract, bad faith, and unfair and deceptive trade practices.

II.

Travelers has moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because, it argues, the statute of limitations bars the breach of contract and bad faith claims and the allegations of bad faith and unfair and deceptive trade practices are insufficient. In support of its motion, Travelers attached three exhibits identified as a certified copy of the Policy [Docs. #9-1, 9-2], a copy of the actual cash value payment letter [Doc. #9-3], and a copy of the denial letter [Doc. #9-4].

To survive a motion to dismiss made pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has

2

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). However, when a complaint states facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in his favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level". Id. at 555.

Furthermore, a defendant may raise the statute of limitations bar, which is an affirmative defense, pursuant to a Rule 12(b)(6) motion. Dean v. Pilgrim's Pride
3

Corp., 395 F.3d 471, 474 (4th Cir. 2005). But, "the time bar [must be] apparent on the face of the complaint." Id.

"While a 12(b)(6) motion focuses on the allegations of the complaint, it is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was integral to the complaint and authentic." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 164 (4th Cir. 2016) (internal quotation omitted). A document is not integral to the complaint when the "claims do not turn on, nor are . . . otherwise based on" the document. Id. at 166 (finding that the police incident report was not integral to the complaint where "the complaint included a few quotes from and references to the" report but the claims did not turn on and were not otherwise based on the statements in the report) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("explaining that a document is 'integral to the complaint' 'where the complaint relies heavily upon its terms and effect' (internal quotation marks omitted)"); Smith v. Hogan, 794 F.3d 249, 255 (2d Cir. 2015) ("document with 'no independent legal significance to [plaintiff's] claim' was not integral to the complaint")). Not only does Ireifej quote from the Policy, but its contents are integral to his claims, most evidently because the terms specify each party's obligations. Therefore, it is appropriate to consider the attached certified copy of the Policy. On the other hand, Ireifej does not challenge the payment of the actual cash value or refer to the existence or the contents of the so-called actual cash value payment letter dated July 14, 2015. Likewise, Ireifej does not allege the

4

existence or contents of a denial letter dated April 10, 2020, only that Travelers refused to comply with the Policy. Neither the actual cash value payment letter nor the denial letter is integral to the Complaint, and, as such, neither will be considered.

A.

1.

Travelers first challenges the timeliness of the breach of contract claim. It contends that Ireifej's property was damaged by fire and, because the Policy is a fire insurance policy, North Carolina law requires that an action be brought within three years of the date of loss, April 28, 2015. (Br. in Supp. of Mot. to Dismiss by Travelers ("Br. in Supp.") at 5-8 [Doc. #10].) Travelers argues that suit was brought well beyond three years from the date of the loss. (Id. at 8.)

Ireifej does not appear to dispute the date of the loss or the three-year statute of limitations but, instead, argues that his action could not possibly have accrued on the date of the loss because Travelers did not breach the Policy until its post-March 2020 refusal to comply. (Pl.'s Mem. of Law in Supp. of His Resp. in Opp'n to Def.'s Mot. to Dismiss ("Br. in Opp'n") at 4-6 [Doc. #14].) Furthermore, he contends that "[t]he appraisal process and subsequent refusal by [Travelers] to fully compensate [him] are conditions precedent to this suit." (Id. at 5, 6 (relying on Patel v. Scottsdale Ins. Co., 728 S.E.2d 394 (N.C. Ct. App. 2012).)

Despite the attractiveness of Ireifej's arguments on their face, courts have rejected them. In North Carolina, every fire insurance policy must contain certain

5

standard provisions set out in N.C. Gen. Stat. § 58-44-16. Of particular relevance here is the standard provision governing suit: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law unless all the requirements of this policy have been complied with and unless commenced within three years after inception of the loss." N.C. Gen. Stat. § 58-44-16(f)(18). Indeed, as required, the Policy states:

> No one may bring a legal action against us under this Coverage Form unless:
> 1. There has been full compliance with all of the terms of this Coverage Form, and
> 2. The action is brought within 3 years after the date on which the direct physical loss or damage occurred.

(Policy Endorsement N.C. Changes § 1 at 16[1] [Doc. #9-1].) North Carolina's Supreme Court has interpreted the word "inception" as used in "inception of the loss" in this context to mean "'the beginning, the commencement, the initiation of the loss [that was] caused by fire.'" Marshburn v. Associated Indem. Corp., 353 S.E.2d 123, 126 (N.C. Ct. App. 1987) (quoting Boyd v. Bankers & Shippers Ins. Co., 96 S.E.2d 703, 707 (N.C. 1957)). The North Carolina Court of Appeals has since held that "that the phrase 'inception of the loss,' when used in a policy of insurance . . . means that the policy limitation period runs from the date of the occurrence of the event out of which the claim for recovery arose." Id. A claim filed after the limitations period is barred "unless the insurer, by its conduct, waives or is estopped from relying upon the limitation provision of the policy." Id.

---

[1] The page number corresponds to "Travelers Doc Mgmt" number.

As is evident, a claim for breach of an insurance policy like the one at issue here begins to run on the date of the loss, not the date the insurer denies the claim, as Ireifej argues. The plaintiff in Dorman v. Grain Dealers Mutual Insurance Company, No. 1:09CV268, 2010 WL 1462551 (W.D.N.C. Mar. 18, 2020), recommendation adopted by, 2010 WL 1462557 (Apr. 13, 2010), took the same position in opposition to a motion to dismiss but the court was not persuaded. After a fire occurred at the insured property on April 3, 2005, the plaintiff, his attorney, an adjuster, and attorneys for the insurer exchanged communications about the repair estimates. Id. at *1. After not having heard from the plaintiff or his attorney, the insurer mailed the plaintiff a check on January 17, 2007, after which the plaintiff's attorney responded on September 24, 2007 with additional repair estimates. Id. at *1-*2. The parties met on January 31, 2008, and the plaintiff's attorney sent the insurer another estimate on May 2, 2008. Id. at *2. On June 26, 2008, the insurer denied the plaintiff's "claim based upon the provisions of the policy that required that any legal action would have to be brought within three years after the date on which the loss or damage occurred." Id.

The plaintiff argued that the statute of limitations did not begin to run until the insurer denied his claim in June 2008. Id. at *6. The court responded, "This contention finds no legal support and appears to be contrary to what is now well settled law in North Carolina." Id. (citing Marshburn, 353 S.E.2d 123 and Lanier v.

7

State Farm Fire & Casualty Co., No. 5:07CV129-V, 2009 WL 926914 (W.D.N.C. Mar. 31, 2009)).

Just as a plaintiff cannot rely on the date of the claim denial for accrual, he cannot rely on the date the appraisal is completed. In Bankaitis v. Allstate Insurance Company, 229 F. Supp. 3d 381, 383 (M.D.N.C. 2017), the plaintiffs' home was destroyed by fire on January 29, 2012. After disagreement over the cost to rebuild, the plaintiffs invoked the appraisal process which concluded on August 4, 2015. Id. at 383-84. The plaintiffs filed suit on January 27, 2016. Id. at 384. The plaintiffs argued that they could not have brought suit before the appraisal was complete on August 4, 2015 and, like Ireifej, relied on Patel, 728 S.E.2d 394. While Patel addressed the prerequisites to bringing suit, the Bankaitis court recognized that "of significance" the Patel court "did not address the interplay between a condition precedent under an insurance policy and a statute of limitations." 229 F. Supp. 3d at 386. The Bankaitis plaintiffs "provided no North Carolina authority for their argument that participation in, or completion of, an appraisal has any impact on the applicable statutory or contractual limitations for them to file action", nor did the court find any. Id. Furthermore, the court noted that North Carolina is not among the "jurisdictions [that] have enacted statutes that specifically toll the statute of limitations during appraisal". Id. Quoting Lanier, 2009 WL 926914, at *4, the court explained, "If the North Carolina legislature intended for the statutory limitations period to be tolled during the entirety of the claims process to allow . . . a final decision on the claim, either the standard policy

8

form or governing statute would expressly provide for tolling"; "[i]t has not seen fit to do so." Bankaitis, 229 F. Supp. 3d at 386.

Therefore, just as the plaintiffs' arguments in Dorman and Bankaitis were foreclosed, so, too, are Ireifej's. North Carolina law required him to bring his breach of contract claim within three years of April 28, 2015, and he did not do so until July 13, 2020.

2.

Travelers also argues that the bad faith claim is time-barred by the same statute of limitations (accruing from the same date of loss) "established by the Standard Policy" because the "claim derives from the insurance policy." (Br. in Supp. at 8-9.) As above, Ireifej does not appear to dispute the three-year statute of limitations, nor does he appear to disagree that the bad faith claim arises from the Policy[2]. Instead, he argues that the claim did not accrue until Travelers allegedly refused to comply with the Policy after his March 2020 inquiry. (Br. in Opp'n at 7.) Once again, the law does not support Ireifej's position. Because the bad faith claim arises from the Policy, it is governed by the same three-year statute of limitations and accrues from the same date as the breach of contract claim, April 28, 2015. See Bankaitis, 229 F. Supp. 3d at 385-86; Quillen v. Allstate Corp., No. 1:14-cv-00015-MR-DLH, 2014 WL 6604897, at *4 (W.D.N.C. Nov.

---

[2] A review of the allegations in support of the bad faith claim confirm that they derive from the Policy. (See Compl. ¶¶ 30-31.)

20, 2014); Lanier, 2009 WL 926914, at *2-*3; Page v. Lexington Ins. Co., 628 S.E.2d 427, 430 (N.C. Ct. App. 2006). Therefore, it, too is time-barred.

3.

However, even though the breach of contract and bad faith claims are untimely, they may be pursued if, as is relevant here, Travelers is "estopped from relying upon the limitation provision of the policy." Marshburn, 353 S.E.2d at 126. Indeed, in response to Travelers' motion to dismiss, Ireifej argues that he "has sufficiently alleged a viable equitable estoppel claim to survive dismissal". (Br. in Opp'n at 16 (contending that Travelers "acted even more egregiously and unreasonably" than the insurer in Bankaitis against whom the court found the plaintiff had sufficiently alleged facts to support equitable estoppel).) He asserts that Travelers "conceal[ed] from [him] its intent to refuse to comply with the replacement cost provision of the Policy", "withheld its position that the damage was limited in scope which did not warrant replacement", and "attempt[ed] to punish [him] for not making a repair or replacement 'as soon as reasonably possible after the loss or damage'" although Travelers "did not issue the check for the appraisal award until October 10, 2019". (Id.)

The North Carolina Supreme Court has explained that when assessing the propriety of equitable estoppel, both parties' conduct is "weighed in the balances of equity". Hawkins v. M & J Finance Corp., 77 S.E.2d 669, 672 (1953). The party asserting estoppel must allege

10

> (1) [c]onduct which amounts to a false representation or concealment of material facts, or at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts.

Id. That party must also allege: "(1) [his] lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) [his] reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially." Id. Travelers argues that Ireifej has not alleged his inability to learn the facts in question or that Travelers "lulled him into a false sense of security". (Reply Br. in Supp. of Mot. to Dismiss by Travelers at 8-12 [Doc. #15].) The Court agrees.

Ireifej has not alleged any misrepresentation or concealment by Travelers that would have prevented him from filing suit within the limitations period. Furthermore, despite Ireifej's position otherwise, the facts of this case are distinguishable from those in Bankaitis where the plaintiff sufficiently alleged, among other facts, that the insurer concealed its intent to deny coverage. See 229 F. Supp. 3d at 383-84, 387. Here, the extent of the allegations of Travelers' conduct is that it deemed Ireifej's loss covered, disagreed with him on the adjustment of loss, paid the appraisal award just over two weeks after it was

11

signed, and refused to pay the replacement cost value.[3] In sum, Ireifej has not sufficiently pled facts to support the application of equitable estoppel. Therefore, because his claims for breach of contract and bad faith are barred by the statute of limitations, they are dismissed.[4]

B.

Next, Travelers argues that the Complaint fails to sufficiently allege facts to support the unfair and deceptive trade practices claim which is based on alleged misrepresentations and unfair settlement practices. It contends that the misrepresentations are not alleged with the requisite particularity. (Br. in Supp. at 13-14.) And, it argues, the two paragraphs on which the Complaint relies to show unfair settlement practices do no such thing because they either simply allege breach of contract or are conclusory. (Id. at 14-16.) Ireifej disagrees. (Br. in Opp'n at 13-14.)

A plaintiff asserting a violation of N.C. Gen. Stat. § 75-1.1 must allege: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiff[]." Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000). "[A] practice is deceptive if it has the tendency to

---

[3] There are also no dates alleged of any events during the limitations period other than the date of the loss.

[4] It is, therefore, unnecessary to address whether or not Ireifej sufficiently alleged bad faith. Travelers also argues in its brief that Ireifej has not sufficiently alleged a breach of contract claim, (Br. in Supp. at 9-10), but it does not list that in its motion as among the bases for dismissal. Nevertheless, it is likewise unnecessary to address that argument.

12

deceive" and "'is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" Id. (citing and quoting Marshall v. Miller, 276 S.E.2d 397, 403 (N.C. 1981)). When a plaintiff alleges that misrepresentations and his detrimental reliance on them form the basis of his unfair and deceptive trade practices claim, he must comply with the pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure. Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 731 (M.D.N.C. 2015). Rule 9(b) requires that a plaintiff allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008).

In addition, the insurance industry is specifically prohibited from "unfair methods of competition and unfair and deceptive acts or practices". See N.C. Gen. Stat. § 58-63-15. Section 58-63-15(11) provides "examples of conduct . . . support[ing] a finding of unfair or deceptive acts or practices," Gray, 529 S.E.2d at 683 (holding that "conduct that violates subsection (f) of N.C. [ Gen. Stat.] § 58-63-15(11) constitutes a violation of N.C. [ Gen. Stat.] § 75-1.1, as a matter of law"). The unfair claim settlement practices identified in § 58-63-15(11) are:

> a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
>
> b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

13

d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed;

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

i. Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured;

j. Making claims payments to insureds or beneficiaries not accompanied by [a] statement setting forth the coverage under which the payments are being made;

k. Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

l. Delaying the investigation or payment of claims by requiring an insured claimant, or the physician, of [or] either, to submit a preliminary claim report and then requiring the subsequent submission of formal proof-of-loss forms, both of which submissions contain substantially the same information;

m. Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; and

n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

(Alterations in original.) Here, Ireifej alleges that Travelers:

> made material misrepresentations of fact concerning the nature and quality of the policy of insurance . . . for the sole purpose of inducing justifiable reliance by [him] in the premiums for a policy of insurance which [Travelers] represented would protect [his] interest in the

14

premises on a replacement cost basis, when [Travelers] knew that
these representations were false, fraudulent and misleading.

(Compl. ¶ 39.) Travelers also allegedly "misled [Ireifej] by inappropriately relaying [sic] on policy language in an inconsistent or improper manner causing confusion" and Ireifej "justifiably relied upon the material misrepresentations". (Id. ¶¶ 40-41.) Yet, nowhere in the Complaint is there any factual allegation of a misrepresentation, much less one on which Ireifej relied or its content, date, or source. And, there are no facts, particularly alleged or otherwise, as to how Travelers "misled" Ireifej. His allegation of misrepresentations that constitute unfair or deceptive trade practices fails.

Ireifej alleges that Travelers violated § 58-63-15(11)[5] "by engaging in the conduct referenced in paragraphs 25 and 31 of [the] Complaint." (Id. ¶¶ 42-43.) In paragraph 25, he alleges,

Despite submission of reasonable proof and demand for full and
complete payment with respect to [his] loss and replacement cost
benefits, [Travelers] has not paid to [him] all of the policy benefits to
which [he] is entitled under the Policy and has refused to provide
funds sufficient to bring [his] home to pre-loss condition.

This paragraph alleges, if anything, a breach of contract, and "[i]t is well recognized . . . that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.[ Gen. Stat.] § 75-1.1", Branch Banking & Trust Co. v. Thompson, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992), unless "the breach is surrounded by substantial aggravating

---

[5] Ireifej does not specify which provisions among the fourteen apply here.

15

circumstances" in which case "it may sustain an action for" unfair and deceptive trade practices, <u>Griffith v. Glen Wood Co., Inc.</u>, 646 S.E.2d 550, 558 (N.C. Ct. App. 2007). None of the circumstances of this contract dispute is alleged to be substantially aggravating. Paragraph 25 does not support this claim.

Neither does Paragraph 31. There, Ireifej alleges that Travelers "has engaged in the following conduct:"

a. by sending correspondence falsely representing that terms and conditions of [his] policy, specifically the portions of [his] policy relating to claim payments[6];
b. by refusing to acknowledge the timing of the appraisal award in conjunction with the reasonableness of [his] actions;
c. in manipulating and misrepresenting facts to fit a narrative that would lead to denial despite the actual facts of the adjustment and appraisal which would lead to coverage;
d. in failing to pay [his] covered loss in a prompt and timely manner;
e. in failing to objectively and fairly evaluate [his] claim;
f. in conducting an unfair and unreasonable investigation of [his] claim;
g. in asserting Policy defenses without a reasonable basis in fact;
h. in flatly misrepresenting pertinent facts or policy provisions relating to coverage at issue and placing unduly restrictive interpretations on the Policy and/or claim forms;
i. in failing to keep [him] or his representatives fairly and adequately advised as to the status of the claim, specifically by never disclosing [its] intent to never pay replacement cost value on the loss;
j. in failing to promptly provide a reasonable factual explanation of the basis for the denial of [his] claim;
k. in unreasonably withholding policy benefits;
l. in acting unreasonably and unfairly in response to [his] claim;

---

[6] This allegation is either incomplete or "that" is a typographical error that should read "the".

16

> m. in unnecessarily and unreasonably compelling [him] to institute this lawsuit to obtain policy benefits for a covered loss, that [it] should have paid promptly and without the necessity of litigation.

Several of these allegations parallel conduct included in N.C. Gen. Stat. § 58-63-15(11), but none of them are supported by the facts that are alleged in the Complaint, see supra at 1-2. Because Ireifej has not alleged facts to support these conclusory allegations, they, too, cannot support a claim of unfair or deceptive trade practices. Therefore, this claim is dismissed for failure to state a claim for which relief can be granted.[7]

### III.

At the conclusion of his brief in opposition to dismissal, Ireifej "respectfully requests leave to file an Amended Complaint" if the Court "were to find that [the] Complaint is not sufficient to state claims upon which relief can be granted". (Br. in Opp'n at 16-17.) Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure permits a party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . . ." But, Ireifej, who is represented by counsel, chose not to do that.

A party may otherwise amend its pleading with leave of the court, which "should freely" be given, Fed. R. Civ. P. 15(a)(2), unless there is "prejudice, bad faith, or futility", In re: Triangle Capital Corp. Sec. Litig., 988 F.3d 743, 750 (4th

---

[7] Ireifej requests oral argument "given the factual complexity of this action". The parties have sufficiently briefed the issues such that nothing further could be gained from oral argument. That request is denied.

17

Cir. 2021). The Local Civil Rules require that "[a]ll motions" "be in writing" and "[e]ach motion . . . be set out in a separate pleading." L. Civ. R. 7.3(a). The motion must "state with particularity the grounds therefor, . . . cite any statute or rule of procedure relied upon, and . . . set forth the relief or order sought." L. Civ. R. 7.3(b). And, Ireifej must "attach the proposed amended [Complaint] to the motion." L. Civ. R. 15.1. Ireifej's request at the end of his brief in opposition does not comply with the Local Rules, and without a proposed amended Complaint to review, it cannot be determined if such amendment would be futile, assuming for the sake of argument it would not be prejudicial or in bad faith. His request is denied.

IV.

For the reasons stated in this Memorandum Opinion, IT IS HEREBY ORDERED that the Motion to Dismiss by Travelers Casualty Insurance Company of America [Doc. #9] is GRANTED.

This the 9th day of September, 2021.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge